## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EDWARDO GARCIA,                                    Case No.

                    Plaintiff,                 Hon.

v.

SOUTHWEST AIRLINES CO.,

                    Defendant.

---

Charlotte Croson (P56589)
CROSON, TAUB, &
MICHAELS, PLLC
Attorneys for Plaintiff
117 N. First St, Suite 111
Ann Arbor, MI 48104
Tel. 734 519-0973
Fax. 734 519-0876
ccroson@ctmlawyers.com

Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI  48098
Tel. 248 763-6943
Fax. 248 689-3268
terigorman@aol.com

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, EDWARDO GARCIA, by and through his

attorneys, CROSON, TAUB, & MICHAELS, and TERESA J. GORMAN PLLC,

1

and for his Complaint against Defendant, SOUTHWEST AIRLINES CO., states as follows:

## PARTIES

1.      Plaintiff Edwardo Garcia is an individual residing in Wayne County, Michigan.

2.      Defendant Southwest Airlines Co. is a Texas corporation that conducts business in the State of Michigan, and has a registered business address in East Lansing, Michigan.

3.      Defendant Southwest Airlines conducts business and employs individuals in the Eastern District of Michigan.

## JURISDICTION AND VENUE

4.      This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff brings his claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

5.      The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The pendant claims are part of the same case or controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

6.      Venue is proper in this Court because Defendant obligated itself to Plaintiff within the Eastern District of Michigan, Defendant conducts business

within the Eastern District of Michigan, and Plaintiff resides within the Eastern District of Michigan.

## STATEMENT OF FACTS

7.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

8.    Plaintiff began his employment with Defendant on or about August 20, 2016 as a Customer Service Agent at the Detroit Metropolitan Airport.

9.    Plaintiff had been diagnosed with a medical condition of retinitis pigmentosa in or around 1997. This condition affects Plaintiff's peripheral vision.

10.    Plaintiff made Defendant aware of his medical condition upon hire and at different times during his employment.

11.    Plaintiff completed Defendant's training course for  the Customer Service Agent position in or about October 2016.

12.    At all times during his employment with Defendant, Plaintiff had retinitis pigmentosa. Plaintiff developed strategies to aid in improving his peripheral vision and perform his work duties. Such strategies included constant scanning of his work area, as stepping back intermittently to increase his scope of visual field, and use of his sight cane.

13.    During his employment with Defendant, Plaintiff requested accommodations for his medical condition, including a name tag to identify him as

visually impaired to customers, use of a bell on the counter for customers to ring for attention, and larger, darker cursor on his computer screen. Plaintiff's supervisors refused to discuss Plaintiff's request for accommodation.

14.    Plaintiff requested accommodations through Defendant's "ACT" team. Defendant denied Plaintiff's accommodations.

15.    At all times during his employment with Defendant, Plaintiff performed his duties as a Customer Service Agent. Plaintiff was given a probationary performance assessment in January 2017, and no further assessments after that.

16.    Plaintiff successfully completed his probation with Defendant in or about January 2017 and continued in his employment as a Customer Service Agent with Defendant.

17.    From August 2016 to October 2019, Plaintiff performed all the duties and responsibilities of a Customer Service Agent without warranted discipline or performance improvement and without accommodation for his medical condition.

18.    Plaintiff was injured on the job in approximately September 2018. He filed for, and received, workers' compensation benefits until approximately April 2019, when he returned to work.

19.    On or about September 26, 2019, Defendant disciplined Plaintiff for allegedly not properly tagging, with a baggage tag, a passenger item. Plaintiff was

not responsible for any alleged mis-tagging. The non-disabled employee who mis-tagged the bag was not disciplined.

20.     Plaintiff is aware of non-disabled employees of Defendant who have engaged in similar and much worse conduct than that alleged against Plaintiff, but have not been disciplined. Such conduct includes, but is not limited to:

    a.  Sending a bag without a baggage tag to the ramp;

    b.  Mis-tagging a bag, which did not make onto the flight;

    c.  Checking a passenger onto an incorrect flight and mis-tagging bags; and

    d.  Failing to reroute and tag 17 bags which were not loaded onto the flight.

21.     The disparate discipline of Plaintiff was a pretext to make it appear that he was unable to do his job as a Customer Service Agent.

22.     On or about October 10, 2019, Defendant without warning or notice placed Plaintiff on a leave of absence pending a medical examination, alleging concerns about his job performance. Until that time, Plaintiff had not been made aware of any concerns with his job performance, much less any concerns related to his medical condition. There was no legitimate reason for Defendant to request a medical examination and such medical examination was neither job-related nor consistent with business necessity.

23.     The medical examination, performed by a doctor chosen by Defendant, was summary, inadequate, and did not adequately evaluate or assess Plaintiff's

ability to perform the duties of Customer Service Agent—which Plaintiff had performed successfully for more than three years. When Plaintiff attempted to inform Defendant's doctor of the duties of his position, Defendant's doctor refused to listen.

24.   Defendant placed Plaintiff on medical leave, without pay or benefits, in or about December 2019. Plaintiff did not request or require such medical leave.

25.   Pursuant to his Collective Bargaining Agreement, Plaintiff requested a second medical examination. Defendant directed Plaintiff to Defendant's Manager of Labor Relations to obtain that examination.

26.   Defendant instructed Plaintiff to obtain the examination from his own ophthalmologist.

27.   Defendant failed and refuse to return Plaintiff to his duties as a Customer Service Agent at the Detroit Metropolitan Airport.

28.   Instead, Defendant offered Plaintiff an alleged "accommodation" of a potential reassignment to a different position as a Customer Service Representative. Such potential reassignment would have required Plaintiff to relocate to Atlanta, Chicago, or Phoenix, take a pay cut, and lose seniority.

29.   Plaintiff had not requested reassignment as an accommodation and did not require reassignment as an accommodation.

6

30.     Plaintiff has been a resident of Detroit for more than forty years and his family, including his spouse, is located in the area.

31.     Nonetheless, Plaintiff explored the option of reassignment and traveled to Atlanta at Defendant's request. When Plaintiff arrived in Atlanta, he was shown a row of computers where, he was told, all visually impaired persons employed by Defendant worked. Plaintiff was told it was called the "VIP" section. Plaintiff observed employees using accommodations that could have been provided to him in Detroit.

32.     Plaintiff declined reassignment and requested to be returned to his position as a Customer Service Agent at the Detroit Metropolitan Airport.

33.     Subsequent to Defendant's medical exam, Plaintiff had cataract surgery and obtained new glasses. These measures improved Plaintiff's vision.

34.     Plaintiff provided Defendant with medical records and recommendations from several doctors demonstrating that he could return to duty and perform all the essential functions of his position as a Customer Service Agent.

35.     Additionally, Plaintiff requested accommodations including a well-lit working environment, slightly larger fonts on computers, and a hat to decrease glare.

36.     Plaintiff also, again, requested another medical examination. This time, Defendant denied his request.

37.    Defendant also, again, offered Plaintiff the alleged "accommodation" of a potential reassignment.

38.    Defendant terminated and/or constructively discharged Plaintiff on or about March 9, 2020.

39.    Since Plaintiff has been terminated and/or constructively discharged, Defendant has implemented many of the accommodations Plaintiff requested prior to his termination.

40.    Plaintiff timely filed his charge of discrimination with the EEOC on or about October 2019 alleging disability discrimination and failure to accommodate.

41.    Plaintiff received his right to sue letter from the EEOC on or about August 17, 2020 and has filed this complaint within 90 days of receiving the letter.

**COUNT I**
**<u>DISCRIMINATION IN VIOLATION OF THE ADA</u>**

42.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

43.    Plaintiff has a disability as defined by the Americans with Disabilities Act, to-wit: a physical impairment, <u>i.e.</u>, retinitis pigmentosa which substantially limits one or more of his major life activities, <u>i.e.</u>, seeing, and a record of such physical impairment.

44.    Defendant is an employer and Plaintiff is an employee as defined by the Americans with Disabilities Act, 32 U.S.C. § 12111(4)-(5).

8

45.    Plaintiff is a qualified individual with a disability as defined by the ADA. Plaintiff, with or without reasonable accommodation, is able to perform the essential functions of his employment duties with Defendants.

46.    Defendant perceived and/or regarded Plaintiff as having a disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

47.    Defendant discriminated against Plaintiff on account of his real and perceived disability in violation of the ADA, 42 U.S.C. § 12112, by and through their agents, servants, and/or employees, by acts including, but not limited to disparately disciplining Plaintiff, requiring Plaintiff to attend and participate in an unnecessary medical examination that was neither job-related nor consistent with business necessity, removing Plaintiff from his position as a Customer Service Agent, requiring Plaintiff to re-locate, take a pay cut, and lose seniority in order to maintain his employment with Defendant, and terminating and/or constructively terminating Plaintiff's employment.

48.    Defendant's actions in violation of the ADA were willful.

49.    As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

50.     As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## ADA FAILURE TO ACCOMMODATE

51.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

52.     Plaintiff has a disability as defined by the Americans with Disabilities Act, to-wit: a physical impairment, i.e., retinitis pigmentosa which substantially limits one or more of his major life activities, i.e., seeing, and a record of such physical impairment.

53.     Defendant is an employer and Plaintiff is an employee as defined by the Americans with Disabilities Act, 32 U.S.C. § 12111(4)-(5).

54.     Plaintiff is a qualified individual with a disability as defined by the ADA. Plaintiff, with or without reasonable accommodation, is able to perform the essential functions of his employment duties with Defendants.

55.     Defendant perceived and/or regarded Plaintiff as having a disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

56.    After Defendant removed Plaintiff from this position as a Customer Service Agent, Plaintiff obtained medical care and medical opinions returning him to work and requesting accommodations including, but not limited to, a well-lit working environment, slightly larger fonts on computers, a hat to decrease glare, and another medical examination to adequately and fully assess his ability to work as a Customer Service Agent with or without accommodation.

57.    Defendant failed to engage in the interactive process regarding Plaintiff's requests for accommodations.

58.    Plaintiff's requested accommodation did not impose an undue hardship on Defendant.

59.    Defendant refused Plaintiff's requests for accommodations and required Plaintiff to re-locate, take a pay cut, and lose seniority in order to maintain his employment with Defendant, and terminating and/or constructively terminating Plaintiff's employment.

60.    Defendant's actions in violation of the ADA were willful.

61.    As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

62.     As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

### COUNT III
### DISCRIMINATION IN VIOLATION OF THE PWDCRA

63.     Plaintiff incorporates here all previously stated allegations.

64.     At all times relevant hereto, Plaintiff was an employee and Defendant was an employer as defined by Michigan's Persons with Disabilities Civil Rights Act.

65.     Plaintiff has a disability as defined by Michigan's Persons with Disabilities Civil Rights Act, to wit: retinitis pigmentosa, which substantially limits one or more of his major life activities, i.e., seeing, and a record of such disability.

66.     Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

67.     Defendant discriminated against Plaintiff on account of his real and perceived disability in violation of PWDCRA, MCL § 37.1102(1), by and through their agents, servants, and/or employees, by acts including, but not limited to

disparately disciplining Plaintiff, requiring Plaintiff to attend and participate in an unnecessary medical examination that was neither job-related nor consistent with business necessity, removing Plaintiff from his position as a Customer Service Agent, requiring Plaintiff to re-locate, take a pay cut, and lose seniority in order to maintain his employment with Defendant, and terminating and/or constructively terminating Plaintiff's employment.

68.     As a direct and proximate result of Defendant's violation of the PWDCRA, as aforestated, Plaintiff has suffered depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

69.     As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT IV**
**PWDCRA FAILURE TO ACCOMODATE**

70.     Plaintiff incorporates here all previously stated allegations.

71.     At all times relevant hereto, Plaintiff was an employee and Defendant was an employer as defined by Michigan's Persons with Disabilities Civil Rights Act.

72.     Plaintiff has a disability as defined by Michigan's Persons with Disabilities Civil Rights Act, to wit: retinitis pigmentosa, which substantially limits one or more of his major life activities, i.e., seeing, and a record of such disability.

73.     Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

74.     After Defendant removed Plaintiff from this position as a Customer Service Agent, Plaintiff obtained medical care and medical opinions returning him to work and requesting accommodations, in writing, including, but not limited to, a well-lit working environment, slightly larger fonts on computers, a hat to decrease glare, and another medical examination to adequately and fully assess his ability to work as a Customer Service Agent with or without accommodation.

75.     Defendant failed to engage in the interactive process regarding Plaintiff's accommodation.

76.     Plaintiff's requested accommodation did not impose an undue hardship on Defendant.

14

77.     Defendant refused Plaintiff's requests for accommodations and required Plaintiff to re-locate, take a pay cut, and lose seniority in order to maintain his employment with Defendant, and terminating and/or constructively terminating Plaintiff's employment.

78.     As a direct and proximate result of Defendant's violation of the PWDCRA, as aforestated, Plaintiff has suffered depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

79.     As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

### COUNT V
### RETALIATION IN VIOLATION OF THE PWDCRA

80.     Plaintiff incorporates here all previously stated allegations.

81.     Plaintiff has a disability as defined by Michigan's Persons with Disabilities Civil Rights Act, to wit: retinitis pigmentosa, which substantially limits one or more of his major life activities, i.e., seeing, and a record of such disability.

15

82.     Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

83.     After Defendant removed Plaintiff from this position as a Customer Service Agent, Plaintiff obtained medical care and medical opinions returning him to work and requesting accommodations, in writing, including, but not limited to, a well-lit working environment, slightly larger fonts on computers, a hat to decrease glare, and another medical examination to adequately and fully assess his ability to work as a Customer Service Agent with or without accommodation.

84.     Defendant retaliated against Plaintiff for his request for a reasonable accommodation, as set forth herein, in violation of the PWDCRA, MCL § 37.1602, by and through its agents, servants, and/or employees, by acts including, but not limited required Plaintiff to re-locate, take a pay cut, and lose seniority in order to maintain his employment with Defendant, and terminating and/or constructively terminating Plaintiff's employment.

85.     As a direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

86.    As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT VI
## Worker's Compensation Retaliation

87.    Plaintiff herein reincorporates its allegations in the paragraphs above.

88.    MCL § 418.301(11) provides "A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act."

89.    Plaintiff was an employee as defined in the Act and was injured on the job.

90.    Plaintiff exercised his rights under the Act by making a claim for worker's compensation benefits, and taking time off to see a doctor for a work-related injury.

91.    Defendant took adverse employment actions against Plaintiff, including, but not limited to: disparately disciplining Plaintiff, requiring Plaintiff to attend and participate in an unnecessary medical examination that was neither job-

17

related nor consistent with business necessity, removing Plaintiff from his position as a Customer Service Agent, requiring Plaintiff to re-locate, take a pay cut, and lose seniority in order to maintain his employment with Defendant, and terminating and/or constructively terminating Plaintiff's employment.

92.    Plaintiff's worker's compensation claim was a motivating factor in Defendant's decisions to take adverse actions against Plaintiff, as set forth herein.

93.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, EDWARDO GARCIA, requests that the Court enter the following relief:

a. back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits;

b. compensatory damages and exemplary damages, including pain and suffering and other emotional damages, and punitive damages;

c. an injunction prohibiting Defendant from further violations of the law as described here;

d. attorney's fees, costs, and interest; and

e. any other relief to which Plaintiff may be entitled.

Respectfully Submitted,

CROSON, TAUB, & MICHAELS, PLLC

/s/ Charlotte Croson
Charlotte Croson (P56589)
Attorneys for Plaintiff
117 N. First St. Suite 111
Ann Arbor, MI 48104
(734) 519-0873
ccroson@ctmlawyers.com

Dated: November 11, 2020

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EDWARDO GARCIA,                                    Case No.

                    Plaintiff,                     Hon.

v.

SOUTHWEST AIRLINES CO.,

                    Defendant.

---

Charlotte Croson (P56589)
CROSON, TAUB, &
MICHAELS, PLLC
Attorneys for Plaintiff
117 N. First St, Suite 111
Ann Arbor, MI 48104
Tel. 734 519-0973
Fax. 734 519-0876
ccroson@ctmlawyers.com

Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI  48098
Tel. 248 763-6943
Fax. 248 689-3268
terigorman@aol.com

---

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COMES Plaintiff, EDWARDO GARCIA, by and through his

attorneys, CROSON, TAUB, & MICHAELS, PLLC and TERESA J. GORMAN

PLLC and hereby demands for a trial by jury, for all issues so triable.

20

Respectfully Submitted,
CROSON, TAUB, & MICHAELS, PLLC

/s/ Charlotte Croson
Charlotte Croson (P56589)
Attorneys for Plaintiff
117 N. First St. Suite 111
Ann Arbor, MI 48104
ccroson@ctmlawyers.com
November 11, 2020                (734) 519-0873